## THE LAKE ERIE AND PITTSBURG RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3558.   Promulgated August 6, 1945.

*Gerald E. Dwyer, Esq.*, and *Leo Manville, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

560

562

## OPINION.

Smith, *Judge*: The only questions for our determination are:

(1) Whether the respondent acted within the scope of his authority in allocating any of the gross income of the New York Central and the Pennsylvania to the petitioner, and

(2) If not, whether the modification of the original agreement of January 10, 1908, dates from January 1, 1937, or from September 27, 1939, when it was formally approved.

The provisions of section 45 of the Internal Revenue Code (the same section of the Revenue Acts of 1936 and 1938) are as follows:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

Our first question is whether we have here "two or more organizations, trades, or businesses * * * owned or controlled directly or indirectly by the same interests" within the meaning of the statute. If not, then the respondent was without authority to make the allocation.

The statute does not define what is meant by the term "control." The Commissioner's regulations, section 19.45–1 of Regulations 103, contain the following provisions relating to the meaning and application of section 45:

SEC. 19.45–1. *Determination of the taxable net income of a controlled tax-payer.*—(a) *Definitions.*—When used in this section—

    *        *        *        *        *        *        *

(3) The term "controlled" includes any kind of control, direct or indirect, whether legally enforceable, and however exercisable or exercised. It is the

reality of the control which is decisive, not its form or the mode of its exercise. A presumption of control arises if income or deductions have been arbitrarily shifted.

\* \* \* \* \* \* \*

(b) *Scope and purpose.*—The purpose of section 45 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true net income from the property and business of a controlled taxpayer. The interests controlling a group of controlled taxpayers are assumed to have complete power to cause each controlled taxpayer so to conduct its affairs that its transactions and accounting records truly reflect the net income from the property and business of each of the controlled taxpayers. If, however, this has not been done, and the taxable net incomes are thereby understated, the statute contemplates that the Commissioner shall intervene, and, by making such distributions, apportionments, or allocations as he may deem necessary of gross income or deductions, or of any item or element affecting net income, between or among the controlled taxpayers constituting the group, shall determine the true net income of each controlled taxpayer. The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

\* \* \* \* \* \* \*

(c) *Application.*—Transactions between one controlled taxpayer and another will be subjected to special scrutiny to ascertain whether the common control is being used to reduce, avoid, or escape taxes. In determining the true net income of a controlled taxpayer, the Commissioner is not restricted to the case of improper accounting, to the case of a fraudulent, colorable, or sham transaction, or to the case of a device designed to reduce or avoid tax by shifting or distorting income or deductions. The authority to determine true net income extends to any case in which either by inadvertence or design the taxable net income, in whole or in part, of a controlled taxpayer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

The agreement of January 10, 1908, as modified by the agreement of September 27, 1939, makes no provision for the payment of dividend rental. The respondent has attempted to allocate gross income of the New York Central and Pennsylvania under section 45 of the Internal Revenue Code and prior revenue acts in order to provide a rental income for petitioner equal to a dividend at the rate of 5 percent on its capital stock. But the Commissioner is not authorized to make such an allocation except where two or more organizations, trades or businesses are owned or controlled directly or indirectly by the same interests. The question at once arises whether the petitioner and either of the lessee companies are owned by the same interests. The New York Central and the Pennsylvania are competing railroad companies. Each of them is controlled by its own stockholders. The respondent makes no contention that the stockholders of the New York Central, or any considerable number of them, are also stockholders of the Pennsylvania. The stockholders of the New York Central are not the "same interests" as the stockholders of Pennsylvania. And neither the New York Central nor the Pennsylvania has control of the petitioner. Together they do have. But that amounts to saying nothing

more than that the stockholders of a corporation control it. We do not think that it can be said that where two or more corporations owned by different sets of stockholders control another corporation such other corporation is controlled by the same interests. Thus where two or more railroad companies own all of the capital stock of a terminal facility it can not be said that the terminal facility is owned by the same interests unless it be that the stockholders of the several railroad companies owning such capital stock are identified one with the other. Therefore we do not think that the Commissioner has authority under section 45 to allocate a part of the income of the New York Central and of the Pennsylvania to the petitioner for the purpose of giving it a taxable income.

The respondent appears to labor under the view that the New York Central and the Pennsylvania had a large investment in the petitioner corporation which was represented by its investment in the capital stock of the petitioner. He therefore assumes the right to allocate a part of the income of the two lessee railroad companies to the petitioner. We do not think that that can be done under section 45. We think it clear that if the two lessee railroad companies had from the beginning operated under the agreement which was in effect from September 27, 1939, the respondent would have no ground for making an allocation of income of the two lessee railroad companies between them and the petitioner. Clearly two or more corporate stockholders owning all of the stock of a subsidiary have a right to fix the amount of the rental which the stockholders shall pay for the facilities of such corporation.

In our opinion the two lessee railroad companies and the petitioner are not owned by the same interests. The respondent's determination that they are taxable upon a fictitious income after September 27, 1939, is reversed.

The question remains as to whether the amendment made to the original agreement on September 27, 1939, was effective from January 1, 1937, as it declared it was. The petitioner submits that the amendment was under consideration by the two companies long prior to September 27, 1939, and points to the fact that the additional rental based on stock ownership was not paid to the petitioner after about the middle of 1937. It is to be observed, however, that the petitioner was on the accrual basis. Until the agreement of January 10, 1908, was modified by the supplemental agreement, it was in effect. We therefore hold that the amendment to the agreement did not take effect until after it was approved by the board of directors of Pennsylvania, which was September 27, 1939.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, dissents.

DISNEY, *J.*, dissenting: The majority opinion seems to me to be necessarily and essentially based upon the statement made in the opinion that "The stockholders of the New York Central are not the 'same interests' as the stockholders of Pennsylvania." I do not find a finding of fact to that effect. Since section 45 of the Internal Revenue Code authorizes the Commissioner to allocate income or deductions between corporations "owned or controlled directly or indirectly by the same interests," in the absence of a finding negativing such ownership or control, by the same interests, of petitioner corporation and the other corporations herein involved, we do not seem to me to be justified in concluding that the Commissioner erred in making the allocation. So far as the record shows—and certainly we can not take judicial notice in this respect—the two corporations which own the petitioner may be owned or controlled by the same interests. I would sustain the Commissioner for lack of evidence. I therefore dissent.